The opinion of the court was delivered by
Watkins, J.
This is an action in damages alleged to have resulted from an illegal seizure of property of the plaintiff under a writ of provisional seizure for rent defendant claimed of the Knerr O’Brien Gotten Seed Linting and Cleaning Company as his lessee— plaintiff alleging that said seizure was an oppressive and unwarranted trespass upon his property and premises; and that same was accompanied' by a criminal arrest of one of his employés at the instance of the defendant.
The cause was tried by the judge, who rendered judgment in favor of the plaintiff for the sum of $350, and the defendant has appealed. In this court the plaintiff and appellee has answered the appeal and claimed an increased allowance corresponding to the prayer of his petition.
It seems that in October, 1891, the defendant leased to the linting and cleaning company for one year, the properties and premises known as No. 62 Lafayette street, and Nos. 84 and 86 Tchoupitoulas street, in the city of New Orleans — the plaintiff being the owner of a ginnery, transported same to No. 86 Tchoupitoulas street for the convenient use of the company.
On May 30, 1892, the defendant caused a writ of provisional seizure to issue against the company for an unpaid instalment of rent, and thereunder to be seized all of the aforesaid machinery, as well as other property.
In August, 1892, the plaintiff filed an intervention in the suit of the defendant, against the company, setting up his claim of ownership of the ginnery, fixtures and machinery, and the non-liability to *1403 seizure of same; and the court wherein that issue was tried held same not liable to seizure, and ordered and decreed the release of same from seizure; and further held and decided that he was the company’s sublessee of the leased premises of the defendant.
That judgment was not appealed from, and is therefore res judicata, and determines the plaintiff’s right of action for damages, if any he. has suffered.
But the plaintiff’s demand does not exclusively vest upon the illegal provisional seizure of his property antecedent to judgment, for hisaverment and prayer are to the effect that the defendant, in utter-disregard of said judgment, immediately after its rendition commenced a systematic plan of operations whereby he was to be ousted and dispossessed of the leased premises before the termination of his. lease. And the plaintiff charges — employing the language of his counsel’s brief — that the defendant, in “utter contempt of the decision of the court, made demands upon Scott for immediate vacation of the premises, and finally, inflamed by Scott’s resolute maintenance of his rights under his lease and under the judgment,, resolved to take the law into his own hands, at least to the extent of invading the plaintiff’s premises and violently interfering with his-affairs. The trespass was the more offensive as it actually proceeded to the criminal arrest of Scott’s engineer, who was compelled to abandon the running of the engine — fired to perform the work of his employer.”
Per contra, the contention of defendant’s counsel is that “during the month of September the insurance inspector visited the buildings of Moll and reported that the firing of the boiler of Scott in 86 Tchoupitoulas, the furnace end of which had been extended into No. 84 Tehoupitoulas street through the wall (a building which was not subleased by Scott), was dangerous to the buildings. Moll was notified that if fire was lighted under said boiler the insurance on his buildings would be canceled; and in. fact one or two policies were thrown up by the companies.
“Moll then informed Scott of this fact, and told him he would not be allowed to make any more fires in said boiler.
“On the 27th of September, 1892, a few days before the expiration of the term of the lease of the Knerr O’Brien Company, Scott, notwithstanding the warning of Moll, did fire up his boiler. Upon this, Moll interfered and prevented the act — upon which the boiler was *1404 blowed out for the purpose of being removed to new quarters, No. 60, leased by Scott from another person.
“The Knerr O’Brien Company had placed the boiler to run their machinery, in No. 60, leased by it from another, and not from Moll, the specific condition in their lease from Moll being that said corporation would place nothing in the Moll buildings which would forfeit the insurance.” Pages 3 and 4 of defendant’s brief.
While claim is made in plaintiff’s petition for $500 for the vexatious seizure of his property; $2000 for the loss of profits of his business on that account, and $2500 vindictive damages — aggregating the $5000 demanded in his answer to the defendant’s appeal — yet in his brief, plaintiff’s counsel states that “the damages claimed are those to which he is entitled for the tort for the actual substantial losses sustained in his business.”
His argument is, that while the rule may be, in suits for damages for the inexecution of contracts, that only direct losses which the parties might have contemplated are recoverable, yet in suits for damages arising from torts, a different rule of admeasurement obtains — and this latter rule he seeks to have' applied.
He insists that the facts of this case clearly entitle him to substantial damages — the judgment having awarded nominal damages.
With regard to the tortious acts and conduct of the defendant, after the seizure had been released, the plaintiff, as a witness, says:
“ Before moving from the premises No. 86 Tchoupitoulas street, in the course of business I had accumulated between twenty and thirty bales of cotton in the shed, making quite a bulky arrangement, and before moving I proposed to give that out to meet the ■obligations I had incurred in paying for this seed cotton; and on the 29th day of September Mr. Moll resisted my manager’s efforts to do the proper thing in regard to closing up the affairs in that place, preparatory to moving out on the 1st of October, when the lease was up.”
Again: “ I was prevented from exercising these privileges, which required steam, and for which I was fully prepared, by Mr. Moll’s violent action in regard to bringing a policeman there to arrest my agent and prevent his doing anything; and I could not do anything without my agent being there.”
This selection is made from the evidence of the plaintiff as typical of all the evidence in the case, and as illustrative of the character and *1405 extent of thfe damages he suffered at the defendant’s hands; and giving to it the consideration most favorable to his theory, we are disinclined to increase the allowance in his favor. True it is that plaintiff’s goods and effects were illegally seized for the indebtedness of the Knerr O’Brien Company, and he was necessitated to institute judicial proceedings for the procurement of their release; yet plaintiff was a shareholder in that corporation, and also vice president and a director.
He was at the same time a sublessee of the company, of the defendant’s premises, and after the provisional seizure of its effects he accepted appointment as keeper, and in that capacity had superintendence and control of the property and effects — including those he subsequently claimed and recovered as his own.
In so far as the tortious acts of the defendant, after the seizure had been released, are concerned, his interference took place only three days prior to the expiration of his lease; and upon the plaintiff’s own showing could not have resulted in serious damage.
On the whole we are of opinion that the purposes of justice would be subserved by an affirmance of the judgment.
Judgment affirmed.
Rehearing refused.